**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JUDY PALMA for
JERRICO R. PALMA,

      Plaintiff

vs.                                                                                                 Civ. No. 01-891 JP/RLP

**JOANNE R. BARNHART, Commissioner**
of the Social Security Administration,

      Defendant.

**Magistrate Judge's Analysis
and Recommended Recommendation** [1]

1.       Judy Palma ("Plaintiff" herein) brings this action on behalf of her son, Jerrico R. Palma ("Jerrico" herein), pursuant to §§42 U.S.C. 405(g) and 1383(c) for judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") that Jerrico was not entitled to Supplemental Security Income ("SSI") benefits under the revised statutory definition of disability for children.[2]

2.       Jerrico was born on June 18, 1989, and began receiving SSI benefits in 1993 at age four due to expressive language delays and asthma. (Tr. 75). In October 1997 the Social Security Administration reassessed Jerrico's condition under the newly enacted Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "PRWORA"), which revised the standard for childhood disabilities and required reevaluation in certain cases.

3.       To qualify for disability benefits under the PRWORA, a child must have "a medically

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2]In conducting eligibility re-determinations, the Commissioner is required to "apply the eligibility criteria for new applications for benefits." §42 U.S.C.A. 1382c(d)(2)(A)(ii).

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I). An impairment will only qualify as a disability under the PRWORA if it is severe and constitutes, or is medically or functionally equal to, a disability listed in the designated "Listing of Impairments." §20 C.F.R. 416.924(d) (1998); see 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing"). Pursuant to this standard, Jerrico was found to have severe impairments which did not meet or equal a listed impairment. (Tr. 75-78, 87-88).

3. Plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on July 20, 1998. (Tr. 29-58). The ALJ found that Jerrico has severe impairments of asthma, borderline intellectual functioning, attention deficit hyperactive disorder and a processing disability in the area of visual and auditory memory, which individually or in combination did not meet or equal the requirements of a Listed impairment. (Tr. 17).

4. Jerrico alleges that the ALJ erred by:

    (1) Failing to find that he meets the listing for mental retardation, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, §112.05D, or alternatively

    (2) Failing to find that he suffers from medically determinable physical or mental impairments which result in marked or severe functional limitations that are functionally equivalent to a listed impairment.

5. This Court reviews the Commissioner's decision to determine "whether it is supported by substantial evidence and whether the [Commissioner] applied the correct legal standards." *See Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir. 1994). Substantial evidence while "more than a mere scintilla," is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28

2

L.Ed.2d 842 (1971).

**The ALJ's Finding that Jerrico Did Not Meet the Criteria for Disability Under Listing §112.05D Is Supported by Substantial Evidence.**

6.  Listing §112.05 sets out the criteria for *per se* disability due to mental retardation. Subparagraph D requires a verbal, performance or full scale IQ of 60-70, as measured by valid testing, before the required level of severity is met. Steven Cobb, PhD, conducted a psychological evaluation on Jerrico in May 1997, which included administering the Wechsler Intelligence Scale for Children-Third Edition ("WISC-III"). All IQ scores obtained during that testing exceeded 70.[3] Dr. Cobb stated that his test results were valid. (Tr. 229). Testing performed by the Roswell School District in June 1997 indicated that Jerrico was within the "average range of intellectual functioning." (Tr. 147). Dr. Cobb's testing protocol and results were reviewed at Plaintiff's request by Charles Berry, PhD. Although he disagreed with some of Dr. Cobb's scoring, Dr. Berry, stated that Jerrico's IQ was probably higher than Dr. Cobb's results would indicate, and recommended that Plaintiff not pursue a diagnosis of mental retardation (Tr. 245-247).

7.  Plaintiff argues that additional IQ testing performed in April 2000 by the Roswell School District measured Jerrico's full scale IQ as 67, within the parameters of Listing §112.05D. IQ levels before age 16 may fluctuate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §112.00 D (1998). For that reason, IQ testing for children must be "current" to be considered valid. (Id.) For children of Jerrico's age and intellectual ability, IQ tests are considered current for a period of two years. (Id.). At issue is Jerrico's IQ level as of the date of the ALJ's decision, December 1998. **See** 20 C.F.R. §404.970(b) (1998). The test results obtained by Dr. Cobb meet the regulatory criteria for being current and valid, and therefore constitute substantial evidence supporting the ALJ's determination that Jerrico did not meet the criteria of Listing §112.05D as of the date of his decision.

---

[3]Verbal IQ: 74; Performance IQ: 72; Full Scale IQ: 71. (Tr. 229-230).

8.    I find that the ALJ applied correct legal principles in assessing Jerrico's mental impairment under Listing §112.05D, and that his decision denying benefits pursuant to that Listing is supported by substantial evidence.

### The ALJ's Finding that Jerrico's Mental Impairment Was Not Functionally Equivalent To a Listed Impairment is Supported by Substantial Evidence.

9.    If a child's impairment does not meet or medically equal a listed impairment, the child will still be found disabled provided the impairment is functionally equivalent to a listed impairment. 20 C.F.R. §416.926a (1998). The applicable regulations provide that an impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitation[4] in one area of function or marked limitation[5] in two areas. **See** 20 C.F.R. §416.926a(b)(2) (1998). The areas of functioning evaluated in a child of Jerrico's age are cognition/communication, motor, social, personal and concentration, persistence and pace. 20 C.F.R. §416.926a(c)(4) (1998). The ALJ found that Jerrico had marked limitation in concentration, persistence and pace. Plaintiff argues that Jerrico has marked limitation in cognitive/communicative functioning as well, and therefore qualifies as disabled. Docket No. 10, p. 9).

10.    The cognitive/communicative domain includes a child's ability or inability to learn, understand, and solve problems through intuition, perception, verbal and nonverbal reasoning, and the application of acquired knowledge; and the ability to retain and recall information, images, events, and procedures during the process of thinking, as in formal learning situations and daily

---

[4] Extreme limitation for a child of Jerrico's age requires "no meaningful function in a given area. There my be extreme limitation when several activities or functions are limited, or even when only one is limited." 20 C.F.R. §416.926a(c)(3)(ii)(C)(1998). Plaintiff does not argue that any of Jerrico's limitations are "extreme."

[5] Marked limitation for a child of Jerrico's age is " 'more than moderate' and 'less than extreme.' Marked limitation my arise when several activities or functions are limited or when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." 20 C.F.R. §416.926a(c)(3)(i)(C)(1998)

living. 20 C.F.R. §416.926a(c)(5)(iv)(A) (1998). It also includes a claimant's ability or inability to comprehend and produce language in a spontaneous, interactive, sustained, and intelligible manner, using increasingly complex vocabulary and grammar. Id.

11. In evaluating Jerrico's functional impairments, the ALJ cited to evaluations prepared by two agency medical consultants. These evaluations, though not identical in assessing the severity of Jerrico's cognitive/communicative functioning, did not find marked limitation. The first evaluation, by LeRoy Gabaldon, PhD, found 'less than marked limitation." based on

> IQ dated 21 April '97 --> in 2nd grade performing at/about K.  Multiple problems noted. On Ritalin (note of 05 Nov. '96 states that he is doing well on meds). Wisc-III (5/30/97) V:74; P: 72; FS : 71. Had not taken Ritalin the morning of the test! MSE: speech is adequate; restless/hyperactive; O (oriented) x 2, no evidence of psychotic ideation. Cooperative." (Tr. 94-96).

The second evaluation by Maria B. Williams, PhD, assessed Jerrico's limitation as moderate, but less than marked.

> 8 y.o. male w/ significant academic underachievement, especially in reading skills. (4B) due to a learning disability resulting in deficits in processing visual and auditory memory and visual motor stimuli. Clmt. has average intellectual functioning (K-ABC=97) w/ average knowledge base (SS89) and average language skills. Note: 5/97 testing showed borderline intellectual function is not consistent with functional EOR. Clmt. has significant deficits in attention, concentration & task completion. This may be due to a combination of factors, including ADHD sx, almost no reading skills which makes it very difficult to do school work on his own, and side effects of asthma medication."

(Tr. 104).[6]

12. The ALJ also reviewed the evidence from examining sources, to determine if they supported the severity conclusions reached by Drs. Gabaldon and Williams. He noted Dr. Cobb's IQ test results, and his description of Jerrico as cooperative with adequate speech. (Tr. 19, referring to Tr. 228). He addressed the July 1997 testing/conclusions from Jerrico's school district,

---

[6]The test results referred to by Dr. Williams are from formal testing conducted in June 1997 by Linda Hutchens, licenced educational diagnostician for the Roswell School District. (Tr. 140-150).

stating:

> The examiner noted that the claimant received special education services in a (sic) other health impaired category. The claimant was reevaluated for problems with reading, math, writing and spelling. Test results were summarized as follows: "... it appears that Jerrico is a student within the average range of intellectual functioning with specific processing disorders in the areas of visual and auditory memory/attention, as well as, visual/motor skills. These processing disorders are manifested in reading, spelling and written language disabilities. Math application skills are also negatively impacted. These findings are consistent with previous evaluation results . . ." As a result of this testing, the claimant category for special education services was changed in (sic) the specific learning disability category.

(Tr. 19, referring to Tr. 147-149).

Finally, the ALJ cited to the April 21, 1997, observations of Jerrico's 2nd grade teacher stated that Jerrico was working at a kindergarten level, had a 15 second attention span, was taking Ritalin and exhibited daily inappropriate behavior.[7] (Tr. 107-109). The ALJ noted that as of the date of his decision, Jerrico was in the 4th grade, had had a good response to Ritalin, and concluded that the functional limitations described by the classroom teacher were considered by Drs. Gabaldon and Williams in assessing Jerrico's limitations. (Tr. 20).

13. The ALJ's finding that Jerrico's mental impairment is not functionally equivalent to a listed impairment, that is, that he did not demonstrate a "marked" impairment in two broad areas of functioning, is supported by substantial evidence.

---

[7]Jerrico's classroom behavior problems had resolved as of November 1999. (Tr. 295, no relationship between classroom behavior and academic functioning; Tr. 310, behavior does not impede his learning or learning of others.).

14.     For the reasons stated above, I recommend that Plaintiff's Motion to Reverse be denied and that the decision of the Commissioner denying Plaintiff's Application for Supplemental Security Benefits on behalf of Jerrico R. Palma be affirmed.

Richard L. Puglisi
United States Magistrate Judge